UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:19-cr-00077-JAW |
| | ) | |
| CHRISTOPHER OCHOA | ) | |

## ORDER ON RESTITUTION

This order addresses the allocation of mandatory restitution obligations pursuant to 18 U.S.C. § 336 in a multidefendant investment fraud scheme. The defendant, along with at least two co-defendants, defrauded five victims of nearly $3.5 million dollars. Having deferred the issue of restitution at his sentencing hearing, the defendant, following his guilty plea and sentencing on one count of conspiracy to commit wire fraud, argues that the Court should not impose joint and several liability for the entire loss amount in his case and instead limit his restitution obligation to the amount he personally garnered from the fraud. The government urges the Court to deny this request and hold the defendant responsible for the victims' total loss amount. Because the Court finds the imposition of joint and several liability is consistent with the Mandatory Victim Restitution Act's objective of making victims whole, the Court denies the defendant's request and orders the defendant jointly and severally liable for the full amount of the restitution along with the co-defendants who participated in the fraudulent scheme.

## I.      BACKGROUND

On April 25, 2019, a federal grand jury in Portland, Maine, returned a one-count indictment charging Christoper[1] Ochoa, along with three other defendants,[2] with conspiracy to commit wire fraud pursuant to 18 U.S.C. §§ 1343 and 1349. *Indictment* (ECF No. 38).  On July 22, 2021, Mr. Ochoa pleaded guilty.  *Min. Entry* (ECF No. 140).  On February 11, 2022, Mr. Ochoa appeared before the Court for sentencing.  *Min. Entry* (ECF No. 202).  The Court imposed twenty-nine months imprisonment, three years supervised release, and a $100 special assessment.  *Id.*; *J.* (ECF No. 204).  Pursuant to 18 U.S.C. § 3664(d)(5), the Court deferred ordering restitution until after the sentencing hearing.  *Statement of Reasons* (ECF No. 205), Attach. 1, *Findings Affecting Sentencing* at 2.  On March 14, 2022, Mr. Ochoa filed his memorandum in support of apportioned restitution.  *Mem. in Supp. of Apportioned Restitution* (ECF No. 211) (*Def.'s Mem.*).  On March 17, 2022, the Government filed its memorandum rejecting apportioned restitution.  *Gov't's Mem. Regarding Apportionment of Restitution* (ECF No. 212) (*Gov't's Mem.*).

## II.     THE PARTIES' POSITIONS

### A.      Christoper Ochoa's Position

Mr. Ochoa argues that because the Court has discretion in apportioning restitution among the four coconspirators in this case, one still at large, "joint and

---

[1]      Although Mr. Ochoa was indicted under the name Christopher Ochoa, the Court uses his true name, Christoper Ochoa.  *See Revised Presentence Investigation Report* at 1 n.1 (ECF No. 156).

[2]      In addition to Mr. Ochoa, the indictment charged co-defendants Russell Hearld, Arthur Merson, and another individual with engaging in the conspiracy to commit wire fraud.  *Indictment* (ECF No. 20).  Mr. Hearld and Mr. Merson pleaded guilty to the charge, *Min. Entry* (ECF No. 113); *Min. Entry* (ECF No. 200), and the Court sentenced Mr. Hearld.  *J.* (ECF No. 198).  The fourth individual has not been arrested and is still at large.

several liability for the total amount would unfairly relieve some defendants from [restitution obligations] while requiring those who may be able to pay . . . to bear the burden without regard to their role or culpability." *Def.'s Mem.* at 2. Mr. Ochoa points out "[t]he problem with causation in conspiracies [in] that the loss is not caused by a single person or a single event." *Id.* at 3. Emphasizing the culpability of his co-conspirators, Mr. Ochoa contends that one co-defendant "had been developing schemes for some time . . . and received the largest portion of the fraud proceeds," Russell Herald received significantly more of the proceeds than Mr. Ochoa did, and "Arthur Merson is responsible for recruiting victims." *Id.* at 4.

He goes on to reason that First Circuit precedent on foreseeability and but-for causation has been "eroded" by the Supreme Court's subsequent decision in *Paroline v. United States*, 572 U.S. 434 (2014), which "no longer require[s] an award of restitution [to] be based solely on causation." *Id.* at 2. Mr. Ochoa submits that the Supreme Court's reasoning regarding "aggregate causation logic" in *Paroline*, although "limited to end user child pornography cases[,] . . . should still be applied to 3664(h)" and thus cautions against the imposition of joint and several liability for the full loss amount in this case. *Id.* at 4-5 (quoting *Paroline*, 572 U.S. at 452-53). Acknowledging that "[t]he need to step away from traditional notions of causation is more apparent in cases of end user child pornography possession than it is in wire fraud cases involving direct participant defendants," Mr. Ochoa suggests apportionment will make victims whole while addressing culpability and furthering

3

the rehabilitative policy behind restitution as recognized by the *Paroline* Court.  *Id.* at 5.

He also argues that "[a]pportionment better implements [the First Circuit's] nexus requirement" between conduct and loss in calculating restitution.  *Id.* at 6 (citing *United States v. Simon*, 12 F.4th 1, 64 (1st Cir. 2021)).  According to Mr. Ochoa, "the strongest causal nexus that is neither too remote factual[ly] nor . . . temporally is the direct loss caused by [his] receipt of $230,000.00." *Id.*  He concludes by pointing out that a restitution order from the Florida Bar already obligates him "to pay $1,250,000.00 to [one of the victims,] Mr. Wheaton[,] and his companies." *Id.*; *see also id.*, Attach. 1, *The Fla. Bar v. Christopher Michael Ochoa, Rep. of Referee*, at 27.

B.     **The Government's Position**

The Government urges the Court to deny Mr. Ochoa's request because his "central role in the fraud scheme and significant individual culpability should render him liable for payment of the full amount of restitution." *Gov't Mem.* at 2.  It notes that in a conspiracy to defraud, "a defendant is liable in restitution to all the victims of the reasonably foreseeable acts of his co-conspirators."  *Id.* at 2 (quoting *United States v. Collins*, 209 F.3d 1, 4 (1st Cir. 1999)).  It goes on to argue that Mr. Ochoa "understates his pivotal role" in a fraud that, according to the Government, "never would have happened" without his unique involvement as an attorney.  *Id.* at 3.  The Government disagrees that "an order for the full amount of restitution is too remote factually and temporally," asserting a "direct causal nexus . . . between [Mr. Ochoa's] conduct and all of the victims' losses."  *Id.*  The Government emphasizes that even

4

when he acted on Mr. Hearld's direction, Mr. Ochoa personally withdrew and transferred the victims' funds from his trust account, knowing that it was wrong to do so. *Id.*

The Government says that *Paroline*, which "explicitly limited its holding to the 'special context' at issue," restitution in possession of child pornography cases pursuant to 18 U.S.C. § 2259, is inapplicable here. *Id.* at 4. Because "no such special context exists" in this fraud conspiracy, "*Paroline* does not alter the long-standing availability of joint-and-several liability." *Id.*

The Government goes on to note that "one of the victims . . . received compensation for some of his losses from a third party"[3] but urges that "this should not decrease the amount of restitution Ochoa owes." *Id.* at 4-5 (citing 18 U.S.C. § 3664(f)(1)(B), (j)(1)). It concludes by asking the Court to order "restitution in the amount of $3,473,701, which is the total loss of $3,550,000 for the five victims, minus the $76,299 that Victim B received for the sale of certain real property, the deed to which Victim B received as security for his investment in the investment scheme." *Id.* at 5. "Restitution should be paid to the five victims in the amounts of their losses, and then to the third party that partially compensated Victim B." *Id.*

## III.   LEGAL STANDARD

18 U.S.C. § 3664(h) states:

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the

---

[3]      The Government says "Counsel is still obtaining details regarding the exact amount of this compensation, and will provide further information to the Court in advance of the deadline for making a final restitution determination." *Gov't's Mem.* at 4.

defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

As to the victims' total loss calculation, 18 U.S.C. § 3664(f)(1)(B) provides that "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution." In addition, 18 U.S.C. § 3664(j)(1) states:

> If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

## IV.   DISCUSSION

The investment fraud scheme carried out by the four defendants in this case resulted in nearly $3.5 million in victim losses. Mr. Ochoa asks the Court to invoke its discretion in ordering restitution pursuant to the Mandatory Victim Restitution Act (MVRA) to limit his liability to the amount of money that he personally received from the fraud, $230,000.00.

### A.   Joint and Several Liability in Restitution

As more than one defendant contributed to the victims' loss, the Court has discretion to impose joint and several liability among the defendants and to hold Mr. Ochoa liable for payment of the full amount of restitution. *See United States v. Scott*, 270 F.3d 30, 52 (1st Cir. 2001) (citing 18 U.S.C. § 3664(h)). "If the defendants are each made liable for the full amount, but the victim may recover no more than the total loss, the implication is that each defendant's liability ends when the victim is

6

made whole, regardless of the actual contributions of individual defendants -- a rule that corresponds to the common law concept of joint and several liability." *Id.*

The Court may also, within its discretion, "apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h); *see Scott*, 270 F.3d at 52 (citing *United States v. Trigg*, 119 F.3d 493, 500-01 (7th Cir. 1997) (finding that multiple defendants may be held jointly and severally liable for restitution in different amounts, but victims may not recover an amount in excess of their loss)).

### B.   *Paroline v. United States*

Mr. Ochoa urges the Court to follow *Paroline* and "order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." 572 U.S. at 458 (alterations omitted). In *Paroline*, the Supreme Court endorsed a proximate cause approach in determining restitution pursuant to 18 U.S.C. § 2259 for the crime of possessing child pornography. *Id.* at 453. The Court deemed it "a major step to say there is a sufficient causal link between the injury and the wrong so that all the [child pornography] victim's general losses were 'suffered . . . as a proximate result of [the possession] offense.'" *Id.* The *Paroline* Court, however, explicitly limited its holding to the "special context" of the mandatory restitution statute specific to victims of sexual exploitation and other child abuse. *Id.* at 458.

In the Court's view, Mr. Ochoa's reliance on *Paroline* is misplaced. As the Court observed at sentencing, Mr. Ochoa's crimes amounted to stealing from

defrauded "investor" victims, where the link between the co-conspirators' illegal conduct and the investors' losses is clear.  In a similar fraud case, the Third Circuit held that "*Paroline* does not alter the long-standing availability of joint-and-several liability" in restitution for fraudulent conduct.  *United States v. Kolodesh*, 787 F.3d 224, 242-43 (3d Cir. 2015).  The Third Circuit reasoned that "regardless of whether the words 'special context' refer only to possession-of-child-pornography offenses or, more broadly, to any offense which might involve an 'atypical causal process' underlying the victim's losses, no such special context exists" in a "case involv[ing] straightforward consideration of moneys obtained by fraud."  *Id.* (quoting *Paroline*, 572 U.S. at 449).  Following the Third Circuit's lead, the Court will not base its restitution order in this similarly "straightforward" fraud case on *Paroline*.  *See id; see also United States v. Sheets*, 814 F.3d 256, 261 (5th Cir. 2016) ("*Paroline* . . . did not address the proper apportionment of restitution payments where multiple defendants are jointly and severally liable for restitution arising from a single scheme").

Mr. Ochoa emphasizes the roles of his co-defendants in this conspiracy.  *Def.'s Mem.* at 4.  He notes that one co-defendant "has been developing schemes for some time and not just with these defendants and received the largest portion of the fraud proceeds."  *Id.*  Mr. Ochoa also observes that "[s]ignificant[ly] larger amounts of money went to Russell [Hearld] when compared to Mr. Ochoa even if his role in the conspiracy has never been clearly articulated."  *Id.*  He points out that "Arthur Merson is responsible for recruiting victims."  *Id.*  At the same time, he concedes that

8

he is not claiming his "culpability was less significant, but rather that joint and several liability for the entire amount might relieve some of the burden of restitution even though their role[s were] as significant if not more significant." *Id.*

Mr. Ochoa's argument misses the mark. "In the context of a conspiracy, it is clear that a defendant is liable in restitution to all the victims of the reasonably foreseeable acts of his co-conspirators. No court has ever held to the contrary." *United States v. Babich*, No. 16-cr-10343-ADB, 2020 U.S. Dist. LEXIS 43871, at *26 (D. Mass. Mar. 13, 2020) (quoting *United States v. Collins*, 209 F.3d 1, 4 (1st Cir. 1999)). Even if others designed the fraud, as Mr. Ochoa contends, Mr. Ochoa played a major role in carrying it out, and its success turned on Mr. Ochoa's position as an attorney. Mr. Ochoa induced trusting victims to deposit their money in his law office's trust account, drafted related agreements, and, as the Court raised during the sentencing hearing, disbursed the victims' funds in direct violation of the agreements that he himself drafted. Moreover, each of the victims wired money to Mr. Ochoa's attorney trust account and Mr. Ochoa disbursed the money to his co-conspirators and to himself. *See Revised Presentence Investigation Report* ¶¶ 5-18 (ECF No. 156). In other words, all of the losses subject to restitution passed through Mr. Ochoa's trust account and none is attributable to activity in which he was not involved. *Id.*

Even so, Mr. Ochoa reasons that his co-defendants more directly caused the victims' losses. Again, the victims were lured to "invest" by wiring money to Mr. Ochoa's law firm trust account, which created the illusion of legitimacy and was an essential part of the conspiracy. The victims were reassured by the fact that they

were sending their money to an attorney's trust account, not some unverified bank account.  Even accepting Mr. Ochoa's characterization of the conspirators' relative roles in carrying out the fraud, the First Circuit has made explicit that "[a] sentencing court is not required to consider an individual's role in the offense when awarding restitution." *United States v. Salas-Fernandez*, 620 F.3d 45, 48-49 (1st Cir. 2010) (citing *Scott*, 270 F.3d at 52).

As to the fact that Mr. Ochoa retained less of the proceeds than Mr. Hearld and another co-defendant, Mr. Ochoa improperly conflates his gain with the victims' losses.  The MVRA does not focus on disgorging from each culpable defendant the amount each conspirator illegally gained; rather, the MVRA centers on making victims whole for the losses they sustained as a result of the criminal conduct.  *See United States v. Naphaeng*, 906 F.3d 173, 179 (1st Cir. 2018); *see also Dolan v. United States*, 560 U.S. 605, 613 (2010) (noting that the MVRA's "efforts to secure speedy determination of restitution is *primarily* designed to help victims of crime secure prompt restitution rather than to provide defendants with certainty as to the amount of their liability").  The Court therefore rejects Mr. Ochoa's argument that his restitution should be limited to the amount he personally profited from the fraud, $230,000.  *Salas-Fernandez*, 620 F.3d at 49 ("The court's objective should be to make the victim whole").

The Court similarly disagrees with Mr. Ochoa that the Florida Bar judgment ordering him to pay a portion of the total loss related to a single victim should absolve him from joint and several liability for the loss from the entire fraud scheme and

concludes that such liability is appropriate in Mr. Ochoa's case.  *See United States v. Gioeli*, No. 08-cr-240 (BMC), 2019 U.S. Dist. LEXIS 201536, at *16 (E.D.N.Y. Nov. 19, 2019) ("[T]he legislative history of the MVRA, given the statute's goal of protecting victims, supports an interpretation of joint and several liability"); *see also United States v. Cheal*, 389 F.3d 35, 53 (1st Cir. 2004) ("The court may take a defendant's financial resources into account only insofar as they affect 'the manner in which, and the schedule according to which, the restitution is to be paid'" (quoting 18 U.S.C. § 3664(f)(2)).  In short, if there is a case where the Court could be persuaded to limit a co-conspirator's restitution to an amount attributable to the defendant alone, this is not the case.

### C.    Total Loss Amount

Finally, the Court will not reduce the total loss by the amount of Victim B's third-party reimbursement because "Congress has made it nose-on-the-face plain that a court may not reduce the amount of restitution otherwise due under the MVRA because 'a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source.'"  *United States v. Padilla-Galarza*, 990 F.3d 60, 93 (1st Cir. 2021) (quoting 18 U.S.C. § 3664(f)(1)(B)); *see United States v. Kitts*, 27 F.4th 777, 2022 U.S. App. LEXIS 5656, at *19 (1st Cir. Mar. 3, 2022) ("[R]egardless of whether [victims] were subsequently reimbursed by an insurance policy, it was appropriate to include the full amount of misappropriated funds in the loss calculation" (citing *United States v. Stepanian*, 570 F.3d 51, 55-57 (1st Cir. 2009) (holding that "victims" of crime include those whose losses were reimbursed))); *United*

11

*States v. Stile*, No. 1:11-cr-00185-JAW, 2017 U.S. Dist. LEXIS 191484, at *29 (D. Me. Nov. 20, 2017) (ordering restitution payments first to the victim and then to the insurer pursuant to 18 U.S.C. § 3664(j)(1)).

## V.      CONCLUSION

The Court ORDERS Christoper Ochoa to pay restitution in the amount of $3,473,701, first to the five victims in the amounts of their losses, and then to the third party that partially compensated Victim B.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 15th day of April, 2022